# United States District Court  FILED

**NORTHERN** _____ DISTRICT OF **CALIFORNIA**

2007 NOV -8  P 2: 42

**E-FILING**

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.

DANIEL THOMAS REYES

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: **07-70670** HRL

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __November 8, 2007__ in __Santa Clara__ county, in the __Northern__ District of __California__ defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally possess a List I chemical, to wit, piperidine and its salts, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, to wit, phencyclidine (also known as PCP),

in violation of Title __21__ United States Code, Section(s) __841(c)(2)__

I further state that I am a(n) __DEA Special Agent__ and that this complaint is based on the following
                                      Official Title
facts:

SEE ATTACHED AFFIDAVIT IN SUPPPORT OF CRIMINAL COMPLANT

Maximum penalties:
20 years imprisonment
$250,000 fine
3 years supervised release and
$100 special assessment

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved
As To
Form:  _____
       AUSA: JOHN N. GLANG

Name/Signature of Complainant:   MICHAEL K. ROBINSON

Sworn to before me and subscribed in my presence,

__11/8/07__                                     at   __SAN JOSE, CALIFORNIA__
Date                                                  City and State

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer                      Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

DOCUMENT NO.  CSA's INITIALS
   1            C

DISTRICT COURT
CRIMINAL CASE PROCESSING

# AFFIDAVIT OF MICHAEL K. ROBINSON IN SUPPORT OF COMPLAINT
## I. INTRODUCTION AND PERSONAL QUALIFICATIONS

I, Michael K. Robinson, being duly sworn, state as follows:

I am and have been a Special Agent of the United States Department of Justice, Drug Enforcement Administration (DEA) since June, 1997. I have received formal training at the Drug Enforcement Administration Basic Agent Training, Quantico, Virginia. The sixteen-week DEA Basic Academy included several hundred hours of comprehensive, formalized instruction in, but not limited to, basic narcotic investigations, drug identification, detection, interdiction, familiarization with United States narcotic laws, financial investigations and money laundering, identification and seizure of drug related assets, and undercover operations.

I have also completed a three-day money laundering course in San Jose, CA. This course included, but was not limited to, investigative techniques to detect structured bank account deposits, the use of dummy corporations to hide income, and methods traffickers use to commingle illegal proceeds with legal income.

Since August of 1997 I have been assigned to the DEA San Jose Resident Office. During this time, I have conducted or participated in more than 100 narcotics investigations, including conspiracies to distribute (21 U.S.C. § 846) PCP (Phencyclidine) and the possession of PCP with the intent to distribute (21 U.S.C. § 841).

I have spoken to, and worked with, more experienced federal, state, and municipal narcotics agents and officers. During the course of my employment as a DEA Special Agent, I have participated in numerous investigations of illicit drug trafficking organizations. These investigations have involved the use of confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews, and the service of search and arrest warrants. These investigations include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities,

1

1  and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United
2  States Code, §§ 841(a)(1) and 846.
3       I have participated in over 100 controlled substance investigations and have personally
4  been involved in the arrest of over 70 persons for controlled substance offenses. I have attended
5  several training schools and seminars involving narcotics investigations.
6       I make this affidavit in support of a criminal complaint against Daniel Thomas Reyes for
7  a violation of Title 21, United States Code, § 841(c)(2), possession of a listed chemical, to wit,
8  piperidine and its salts, knowing and having reasonable cause to believe that the listed chemical
9  would be used to manufacture a controlled substance, to wit, phencyclidine (also known as PCP).

## II.   FACTS SUPPORTING PROBABLE CAUSE

11       On November 7, 2007, I met with an individual in San Jose, California who was working
12  as a confidential source (CS) with DEA. The CS was provided with an audio transmitting device
13  which he concealed on his person. The CS and his vehicle were searched by DEA agents for
14  weapons, large amounts of currency, and illegal drugs and none were found. The CS then drove
15  to a predetermined location where other agents were already present conducting surveillance.
16  The CS parked next to a green Honda which had arrived moments earlier. There was only one
17  occupant of the Honda, an individual who was previously known to agents as defendant Daniel
18  Thomas Reyes. The Honda was also registered to the defendant Reyes. Prior to this meeting, the
19  CS had arranged to obtain piperidine, a List I chemical commonly used to manufacture
20  phencyclidine, or PCP, from Reyes.
21       The CS and Reyes both exited their vehicles and met at the rear of the CS's vehicle. A
22  conversation ensued between the CS and Reyes which agents monitored and recorded. Reyes
23  told the CS that Reyes' boss wanted to receive money which the CS then owed to Reyes as a
24  result of a previous purchase of piperidine the CS had made from Reyes. The CS told Reyes that
25  the CS needed "product" (referring to piperidine) at that time to make more money. The CS
26  stated that if he/she had piperidine, he/she could later provide Reyes with two pounds of finished

"product", referring to PCP which the CS would manufacture for Reyes. The CS stated that he/she would make payments to Reyes to pay off the remainder of the CS's debt to Reyes which at that time was $25,000. Reyes agreed to provide a gallon of piperidine to the CS the following morning if the CS paid Reyes the full $25,000 amount. Reyes did not want to "front" the CS another gallon of piperidine without being paid by the CS and thereby create a debt of $50,000.

On November 8, 2007, at approximately 9:12 a.m., the CS, in the presence of a DEA agent, phoned Reyes and asked him to come to the parking lot of a Lucky Market located at the corner of Aborn Road and White Road in San Jose. Reyes agreed to do so. At 9:17 a.m., an agent observed Reyes drive his Honda into the parking lot and park next to the CS. Reyes exited the Honda and opened the trunk of the Honda, where the CS observed a one-gallon container. The CS recognized this to be the type of container that Reyes commonly used to transport piperidine. The CS and Reyes discussed moving the container from the trunk of the Honda to inside the CS's vehicle. The CS then told Reyes that he/she did not have the money on hand at that moment but would leave and return later with it and would meet up with Reyes at a different location.

The CS then departed the area and as Reyes was driving away, agents moved in and arrested him inside his Honda. In the trunk of the Honda, agents located a red five-liter (or a 1 1/4 gallon) gasoline can filled with a liquid.

John Chappel is a Senior DEA Forensic Chemist in San Francisco and has been employed with DEA for 15 years. Chappel has worked with piperidine on approximately five prior occasions and stated that a sample of piperidine is maintained as a standard in the DEA Laboratory in San Francisco. After the arrest of Reyes, Chappel arrived at the scene and examined the gasoline can and its contents. Chappel determined that the can was approximately 80% full, meaning that it contained approximately four liters, or one gallon, of liquid. Chappel conducted a PH test on the liquid and also smelled the liquid. Based on his training and experience, Chappel stated that liquid was consistent with the presence of piperidine.

Based on my training and experience and that of other agents I have worked with, I am aware that one gallon of piperidine can be used to produce seven to ten pounds of finished PCP product and that one pound of PCP has a current street value in the San Jose area of approximately $16,000.

### III. CONCLUSION

Based on the foregoing, I believe that there is probable cause to believe that Daniel Thomas Reyes is guilty of a violation of Title 21, U.S.C., § 841(c)(2), possession of a listed chemical, to wit, piperidine and its salts, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, to wit, phencyclidine (also known as PCP). I therefore request the issuance of a criminal complaint against Reyes for this offense.

_____
Michael K. Robinson, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
before me this ___8___ day of November 2007

_____
HOWARD R. LLOYD
United States Magistrate Judge
Northern District of California

4